**Mrs. Evelyn M. MILLER, Appellee,**

v.

**VITALIFE CORPORATION OF AMERICA, a corporation, and Edward Weaner, Appellants.**

**No. 53650.**

Supreme Court of Iowa.

Dec. 9, 1969.

John D. Randall, Cedar Rapids, for appellants.

Claassen, Kreuter & Ibeling, Cedar Rapids, for appellee.

BECKER, Justice.

This contract action was brought by plaintiff Miller, a resident of Iowa, against defendant Weaner, a resident of Florida and defendant Vitalife Corporation, a Florida corporation. Notice was served as contemplated by section 617.3, Iowa Code, 1966, popularly referred to as the Long Arm Statute. Defendants each filed special appearance challenging the jurisdiction of the court. The special appearances were overruled. Permission for interlocutory appeal was granted. We affirm and remand for trial.

I. Before reciting the factual framework for the case we review the ground rules set out in Tice v. Wilmington Chemical Corporation, 259 Iowa 27, 34, 35, 47, 141 N.W.2d 616, supplemental opinion, 143 N.W.2d 86. In passing upon a special appearance we accept the allegation of the petition and the contents of uncontroverted affidavits as true; the burden is on plaintiff to sustain the requisite jurisdiction, but once a prima facie showing has been made by him the burden is on the defendant to go forward with the evidence to overcome or rebut, if possible, such prima facie case; a hearing on special appearance is a special proceeding not reviewable de novo; and, the finding of the trial court has the force and effect of a jury verdict.

II. Plaintiff owned and operated a mail order business as a sole proprietorship. She sold vitamins to a large number of customers throughout the United States.

The business was offered for sale through Mr. Gettleman as her broker and attorney.

Mr. Weaner became interested as a purchaser and visited the business location in Cedar Rapids in company with Mr. Gettleman and a Mr. Cihla, who had subsequent business dealings with Mrs. Miller, as Weaner's agent. All negotiations were carried on through Mr. Gettleman who received $3500 down payment for the business on the day of the Cedar Rapids visit. The terms were $45,000 for the business, payable $20,000 in cash and $25,000 by $5000 notes with maturity dates of June 1, 1967 and consecutively each year thereafter.

The papers were prepared by Mr. Cypen, Mr. Weaner's Florida attorney, and included formation of a Florida corporation to be wholly owned by Mrs. Miller, transfer of all the assets being sold by Mrs. Miller to the Florida corporation in exchange for capital stock and promissory notes, and sale of all of the capital stock to Mr. Weaner.[1] The rather complicated formula set out in the contract resulted in Weaner paying $10,000 for the corporate stock and Mrs. Miller receiving an additional $10,000 from surplus paid into the corporation by Weaner.[2] The remainder of the purchase price was represented by five $5000 corporate notes.

The papers also included the notes mentioned, payable at such location as the payee might elect, a covenant not to compete for five years in any state in the United States and Mrs. Miller's agreement to serve on the corporate board of directors for three years. Plaintiff alleges the parties knew and intended the assets of the corporation were to be shipped from Iowa to Florida and this was, in fact, accomplished in accordance with the express and implied agreements growing out of the contract made.

The papers were delivered by Mr. Cypen to Mr. Gettleman in Florida, returned to Chicago where they were signed by Mrs. Miller and mailed back to Mr. Cypen in Florida. A $16,500 payment was made by Mr. Weaner's checks at the time of signing. The initial $3500 was delivered to Mr. Gettleman as Mrs. Miller's agent, either in Cedar Rapids (plaintiff's claim) or Illinois or Florida (defendant's claim). The contract was signed by Mrs. Miller; by Vitalife Corporation, by Edward Weaner, President; and by Edward Weaner, personally.

After the papers were signed, Mrs. Miller was asked to and did perform substantial work to keep the business operating and prepare it for shipment. These actions included preparation and shipment of 69,000 labels to Florida, mailing over 16,000 advertising circulars, shipment of free bottles of vitamins to each customer on the customer's birthday accompanied by literature on the corporation, packaging and shipment of a truckload of business equipment from Cedar Rapids to Florida and other substantial activities. When the first note came due, defendant Vitalife Corporation failed to pay it and this action was instituted.

■ III. If a foreign corporation or a nonresident "makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa" such acts shall be deemed doing business in Iowa and service on such corporation or person may be accomplished as provided by statute, section 617.3, Code, 1966. The tort provisions in the same statute were considered and declared constitutional in Tice v. Wilmington Chemical Corp., supra. Defend-

1. Mrs. Miller says she did not know of the intent to interpose a corporate entity in the transaction and didn't discover this until she had signed the papers in Chicago and taken them back to Cedar Rapids. Determination of this controversy is part of the lawsuit and such determination is not necessary to this appeal.

2. There seems to be a $500 mistake in the figures sometimes used by the parties. This error, if present, is immaterial now.

ants do not seriously contend this statute, as it applies to contract actions, is unconstitutional. They question the constitutionality of the act as it applies to the facts of this case. In Tice v. Wilmington Chemical Corporation, supra, we did not squarely pass on the contract provisions of section 617.3 but turned the case on the tort action pled (loc.cit. 259 Iowa pages 41–44, 141 N.W.2d page 625), but we did say: "We conclude defendant's stand (as to contract theory) is without merit. The basic element of this challenge was for the most part resolved against defendant in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. There, under a related statute, the court held a foreign corporate insurance carrier was amenable to process in California even though the insurer had no agents or officers in that state. The court found the nonresident corporation had no vested right not to be sued *on its insurance contract* in the state of an insured's residence." (Emphasis added.)

We need go no further than McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, 226: * * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * *."

Our cases generally tending to sustain the constitutionality of section 617.3, as applied to contract actions, include Chrischilles v. Griswold, 260 Iowa 453, 150 N.W.2d 94; Krueger v. Rheem Manufacturing Co., 260 Iowa 678, 149 N.W.2d 142; Anderson v. National Presto Industries, Inc., 257 Iowa 911, 135 N.W.2d 639. See also collection of cases in Annotation, Validity, As a Matter of Due Process, Of State Statutes or Rules of Court Conferring In Personam Jurisdiction, etc., 20 A. L.R.3d 1201, 1245 et seq. Section 617.3 is constitutional as applied to contract as well as tort actions.

We do not think Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, impels a different result. As noted in Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1, the Hanson case did not overrule International Shoe Co. v. Washington, infra, or McGee v. International Life Ins. Co., supra. The limitations under the peculiar facts of Hanson are not appliable here.

■ IV. The above ruling does not dispose of the matter because, as defendants maintain, we must further determine whether the section is constitutional as applied to the facts before us. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 states: " * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * *."

The most obvious factor tending to show a legitimate state interest in this transaction is the bulk sale of an Iowa based business. The state has long exercised a particular interest in bulk sales through its Bulk Sales Act, chapter 554, Code, 1966. It is interested in protection of its creditor citizens and and all other creditors, including its own tax department. It would also have a legitimate interest in protecting its contracting citizens who are buying or selling the Iowa based business with the usual attendant complications including financing and security arrangements.

But we are not limited here and do not place this decision on the bulk sales nature of the transaction alone. The purchaser's visit to Iowa to inspect the business operation, claimed conclusion of a preliminary oral contract by delivery of a $3500 check in Iowa, subsequent performance of substantial operations by the seller who now claims these operations were contemplated by the parties, a covenant not to compete in any state in the Union which would include Iowa, and the predictable subsequent

election by Mrs. Miller to take payment at her city of residence on the $5000 notes of the corporation, all provide minimum contact with the state of Iowa.

The trial court considered the foregoing factors in concluding notice under section 617.3 conferred jurisdiction and in overruling the special appearance. The contract was performable in whole or in part in Iowa. Traditional notions of fair play to both parties are met by allowing the contracting parties to seek redress in Iowa under the factual situation developed. The ruling was based on substantial evidence.

V. What has been said applies specifically to defendant Vitalife Corporation. Defendant Weaner claims he is in a different position because all he did was to buy stock in the new corporation. This overlooks his visit to Iowa, his own attorney handling the details of the purchase and organization of the corporation, down payment with his personal checks, the fact he signed the contract and supplement thereto individually as well as president of the new corporation. It also overlooks plaintiff's allegations of conspiracy between Weaner and the corporation and the further allegation that Weaner induced the corporation to break its contract with plaintiff. Section 617.3 is applicable to defendant Weaner as well as defendant Vitalife.

VI. The myriad cases following in the wake of International Shoe Co. v. Washington, supra, need not be here analyzed. Each case rests on its own facts. The complications growing out of the various fact situations are considered in the exhaustive annotation found at 20 A.L.R.3d 1201. We conclude the facts in this case fall well within the statutory and constitutional rules necessary to extend jurisdiction to these defendants.

Affirmed.

All Justices concur, except REES, J., who takes no part.