**The RATH PACKING COMPANY,
a corporation, Appellee,**

v.

**INTERCONTINENTAL MEAT TRADERS,
INC., a corporation, Appellant.**

**No. 54073.**

Supreme Court of Iowa.

Nov. 10, 1970.

Mosier, Thomas, Beatty, Dutton & Braun, Waterloo, for appellant.

Swisher & Cohrt, Waterloo, for appellee.

STUART, Justice.

Rath Packing Company (Rath), an Iowa corporation, brought this action for breach of contract against Intercontinental Meat Traders, Inc. (Traders), an Illinois corporation, in Black Hawk County, Iowa under the provisions of the Iowa long arm statute, section 617.3, Code of Iowa, which in its pertinent part provides:

"If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa * * * such acts shall be deemed to be doing business in Iowa by such foreign corporation * * *."

Traders special appearance challenging the jurisdiction of the Iowa courts was overruled. We granted defendant permission to bring this interlocutory appeal.

In passing on a special appearance we accept the allegations of the petition as true. Plaintiff has the burden of sustaining the requisite jurisdiction, but once it has made a prima facie case, the burden is on defendant to produce evidence to rebut or overcome the prima facie showing. This is a special proceeding in which the findings of the trial court have the force and effect of a jury verdict. Miller v. Vitalife Corporation of America (Iowa, 1969), 173 N.W.2d 91, 92; Tice v. Wilmington Chemical Corp. (1966), 259 Iowa 27, 34–35, 141 N.W.2d 616, 621–622, 143 N.W.2d 86.

Here plaintiff made a prima facie case of jurisdiction by showing the existence of a contract to be performed "in

whole or in part" within the State of Iowa. Midwest Packaging Corporation v. Oerlikon Plastics, Ltd. (D.C.1968), 279 F.Supp. 816, 818. Defendant thus has the burden of showing the statute was unconstitutionally applied to these facts. No contention is made on appeal that section 617.3 is unconstitutional on its face.

■ The questions before us on appeal are: (1) whether Traders had sufficient minimum contacts with Iowa so that the courts could take jurisdiction of this action seeking a personal judgment without violating the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States; and (2) whether the doctrine of Forum Non Conveniens requires that the action be brought in Illinois.

I. The record upon which the special appearance was determined consisted of the petition and attached contract, a brief stipulation and the uncontradicted testimony of Traders' president. From this evidence we distill the following facts.

In June 1966 Traders entered into an agreement with Rath for the purchase of two million pounds of fresh frozen pork gelatin skins at 12¢ per pound F.O.B. Waterloo. The contract negotiations were handled by Midwestern Brokerage Co. (Midwestern) of Oak Lawn, Illinois. The president of Traders testified that he was contacted by Midwestern on behalf of Rath. He advised Midwestern as to how many pounds his company would be willing to buy and the price it would pay. Soon thereafter the negotiations were completed and the sale was confirmed by Midwestern.

Traders stipulated through the broker that it wanted shipments made in 120,000 pound lots or as close to that quantity as could be loaded into a rail car. The procedure followed in ordering a load was for Traders to give a shipment order to Midwestern who in turn would contact Rath. Rath would then load the shipment into a railroad car, obtain a bill of lading from the carrier and forward it along with a

sight draft to Traders' Chicago bank. Traders would then pay the bank the amount of the draft and receive the bill of lading entitling it or its consignee to possession at the destination. The skins were shipped from Waterloo before Traders received and accepted the sight drafts.

Pursuant to this arrangement, Traders gave shipping instructions for and cars were sent to: Grays Lake, Illinois; Stoneham, Massachusetts; Scranton, Pennsylvania; Laredo, Texas; and Artificial Ice & Fuel Co., Waterloo. The two shipments to Artificial Ice "were interim shipments made at Rath's request to reduce the amount of products stored at its warehouse". These shipments "were received for the account of Traders pending receipt of shipping instructions from its customers."

Traders' customers began complaining that the pork skins were too fat. Traders conveyed their dissatisfaction to Rath through phone calls made by Midwestern. They also wrote some letters directly to Rath. In September or October 1966 Traders' president, at the suggestion of Midwestern, made a one-day visit to the Columbus Junction and Waterloo plants to see the skins. He had a conference with Mr. McGuire of the Rath Company. No other trips to Iowa were made by any of Traders representatives in connection with this contract.

After a shipment in November of 1967 Traders refused to accept any further delivery. At this time almost 1,300,000 pounds of the skins had been delivered. Rath was forced to sell the remaining skins elsewhere at a loss. It then brought this action for breach of contract alleging damages of $51,000.

Defendant's contacts with Iowa upon which plaintiff relies to satisfy the Due Process Clause of the Fourteenth Amendment are: (1) The trip to Iowa by defendant's president to discuss complaints received by Traders about the condition of the pork skins. (2) The temporary storage

of the skins in Iowa at plaintiff's request and for its benefit. (3) The contract provision for shipment F.O.B. Waterloo to out of state destinations specified by Traders. (4) The size of the order and the shipping in carload lots at defendant's order contemplated a relationship of considerable duration.

In overruling defendant's special appearance, the trial court found sufficient minimum contacts with Iowa in the "F.O.B. Waterloo" provision of the contract. This is the most important factor in the case, but the other matters are also relevant. Considering all factors, however, we cannot agree the evidence is sufficient to give the Iowa courts in personam jurisdiction over defendant.

II. Since International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, courts and legal writers have endeavored to define the constitutional limits of a state's jurisdiction over nonresidents. Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; McGee v. International Life Insurance Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223; L. D. Reeder Contractors of Arizona v. Higgins Industries Inc. (9th Cir. 1959), 265 F.2d 768; Compania de Astral S.A. v. Boston Metals Co. (1954), 205 Md. 237, 107 A.2d 357; Fourth Northwestern Natl. Bank of Minneapolis v. Hilson Industries (1962), 264 Minn. 110, 117 N.W.2d 732; Dahlberg Co. v. Western Hearing Aid Center (1961), 259 Minn. 330, 107 N. W.2d 381; Sun-X International Company v. Witt (Tex.Civ.App.1967), 413 S.W.2d 761; Conn v. Whitmore (1959), 9 Utah 2d 250, 342 P.2d 871; Tyee Construction Co. v. Dulien Steel Products, Inc. (1963), 62 Wash.2d 106, 381 P.2d 245; Reese and Galston, Doing an Act or Causing Consequences as a Basis of Judicial Jurisdiction, 44 Iowa L.Rev. 249; Thode, In Personam Jurisdiction, 42 Texas Law Rev. 279; Annos.: Doctrine of Pennoyer v. Neff, 2 L. Ed.2d 1664; Jurisdiction—Non-resident— Contracts, 23 A.L.R.3d 551; Jurisdiction— Transaction in State, 20 A.L.R.3rd 1201.

We also have dealt with various aspects of the problem. Miller v. Vitalife Corporation of America (Iowa, 1969), 173 N.W. 2d 91; Tice v. Wilmington Chemical Corp. (1966), 259 Iowa 27, 141 N.W.2d 616, 143 N.W.2d 86; Andersen v. National Presto Industries, Inc. (1965), 257 Iowa 911, 135 N.W.2d 639; Hill v. Electronics Corporation of America (1962), 253 Iowa 581, 113 N.W.2d 313. See also: Midwest Packaging Corporation v. Oerlikon Plastics, Ltd. (D.C.1968), 279 F.Supp. 816.

The American Law Institute in the Proposed Official Draft of the Restatement of Conflict of Laws, Second, May 2, 1967 states: "A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state as to any cause of action not in tort arising from the act unless the nature of the act and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable." § 49(2). See also § 36(2) and the discussion thereunder. The courts have been more specific in their statement of the requirements for jurisdiction.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." International Shoe Company v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102.

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. (Citing cases)

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." Ibid., 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104.

"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226.

"The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L. Ed.2d 1283, 1298.

"The amount and kind of activities which must be carried on by the foreign corporation in the State of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." Perkins v. Benguet Consol. Mining Co. (1951), 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492.

Defendant's activities in Iowa were limited to the factors heretofore mentioned. We cannot say it purposefully availed itself of the privilege of conducting business in Iowa. The trip to Iowa was made at the suggestion of Rath's agent to discuss complaints as to the condition of the skins. The storage of skins was to relieve congestion at the Rath plants and was done to accommodate Rath, not Traders. The F.O.B. Waterloo shipment did little but establish the cost. Traders could not get possession of the skins until it obtained the bill of lading by paying the sight draft in Chicago.

Sun-X International Company v. Witt (Tex.Civ.App.1967), 413 S.W.2d 761, is the only case we have found in which an F.O.B. shipment was the principal contact with the forum state. There a Texas corporation brought an action on a contract with a resident of California which was not valid until approved in Houston. Materials purchased under the contract were to be shipped to California F.O.B. Houston. The Texas court said: "We think the mere fact that the goods were shipped by appellant to appellee F.O.B. * * * does not make appellee amenable to in personam jurisdiction in Texas under the facts in this case."

The fact that Rath is a seller seeking to obtain jurisdiction in the state of its residence over a non-resident purchaser is an important factor to be considered in deciding the sufficiency of defendant's contacts with Iowa. The Minnesota Supreme Court has recognized "a sharp distinction between suing a nonresident seller and invoking [the long arm statute] against a non-resident buyer." Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc. (1962), 264 Minn. 110, 117 N.W.2d 732, 735. We believe the distinction is a valid one.

When the action is against a non-resident buyer, plaintiff must show there were sufficient minimum contacts as required by the rules heretofore mentioned. If the action is against a non-resident seller, plaintiff can also rely on the rule that an act outside the forum state which produces consequences in that state is sufficient to give it judicial jurisdiction. McGee v. International Life Insurance Co., supra.

The state also has an interest in protecting its citizens from damages sustained from a product brought into the state which is not present when a resident seller seeks to collect for a product shipped out of state.

This state interest can best be expressed by paraphrasing a statement found in McGee v. International Life Insurance Co., supra. It cannot be denied that a state has a manifest interest in providing an effective means of redress for its residents who purchased a defective product. These residents would be at a severe disadvantage if they were forced to follow a seller to a distant state in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Loc. cit. 355 U.S. at 223, 78 S.Ct. 199, 2 L.Ed.2d at 226.

The same state interest which gives resident purchasers a forum for a cause of action based on defective products brought into the state protects them from being forced to go to a foreign state to defend an action to collect on a contract. These considerations are well expressed in Conn v. Whitmore (1959), 9 Utah 2d 250, 342 P.2d 871, 874-875.

"Brief reflection will bring to mind difficulties to be encountered if the ordering of merchandise in a foreign state by mail and taking delivery through a designated carrier, whether private or common, is to be deemed 'doing business' in a foreign state, which will draw one into the orbit of the jurisdiction of its courts. This would for practical purposes obliterate any protection one might have from being compelled to go to a foreign jurisdiction to defend a lawsuit. A person contemplating business in another state would have only two alternatives: either subject himself to the jurisdiction of the foreign court if any dispute arises, or refrain from doing such business. This would have a bad effect upon commerce. Mail order houses, for example, accept and fill orders from all over the country. If they could sue on their accounts in their own state where it would be highly inconvenient for out-of-state customers to defend, then forward the judgments to the jurisdictions where the customers live, demanding full faith and credit for them, this would effectively prevent the customers from presenting a meritorious defense where one existed. The ultimate result would be to dissuade customers from doing business across state lines by mail. Thus what may seem a temporary advantage to such businesses, in all likelihood would be detrimental to them and to business generally in the long run."

We cannot protect our own purchasers from actions on account or contract commenced in a foreign jurisdiction with which they had no greater contact than defendant in this case had with Iowa and permit our own sellers to bring actions here against nonresidents similarly situated.

Miller v. Vitalife Corporation of America (Iowa, 1969), 173 N.W.2d 91, also involved a single contract contact with the forum state. We held the evidence of purchaser's contacts with Iowa was sufficient to confer jurisdiction on our courts to render an in personam judgment. It is distinguishable from the instant case on the facts. It was not a commercial sale in the regular course of business but the sale of a business involving the Bulk Sales Act, chapter 554, Code of Iowa. Other contacts with Iowa far more extensive than those shown here are recited at pages 94 and 95 of 173 N.W.2d.

We do not believe the minimum contacts requirements for judicial jurisdiction have been met in this case and hold that the maintenance of the suit in Iowa offends traditional notions of fair play and justice. It would be unreasonable to subject this defendant to the jurisdiction of the Iowa courts.

III. Although the doctrine of forum non conveniens can be invoked

when the facts of the particular case show it would be inequitable to take jurisdiction of a cause of action even though the court might have the power to do so, it is rarely applied. Gulf Oil Co. v. Gilbert (1947), 330 U.S. 501, 507–509, 67 S.Ct. 839, 91 L. Ed.2d 1055, 1062–1063; Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, supra, 264 Minn. 110, 117 N.W.2d at 736–738. The evidence here did not show the relative inconveniences were so unbalanced that we should deny jurisdiction under this doctrine.

For the reasons given in division I, we reverse.

Reversed.

All Justices concur.