DOUGLAS MACHINE & ENGINEERING CO., INC., Appellant,

v.

HYFLOW BLANKING PRESS CORPORATION, Appellee.

No. 56611.

Supreme Court of Iowa.

May 21, 1975.

J. Trafford Murray of Dircks & Saylor, P. C., Davenport, for appellant.

Seymore M. Raben, Davenport, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and REYNOLDSON, JJ.

MASON, Justice.

This is an appeal by plaintiff, Douglas Machine & Engineering Co., Inc., from the trial court's ruling sustaining the special appearance of defendant, Hyflow Blanking Press Corporation, challenging the jurisdiction of the Iowa court to subject defendant to a judgment in personam. Plaintiff, an Iowa corporation, is a tool and die manufacturer with its principal place of business in Davenport. Defendant, a New York corporation, is a press manufacturer with its principal place of business in Tarrytown. It has no office in Iowa and had never been authorized to do business in this state.

The ruling under attack was made in an action brought by plaintiff to recover a down payment made by it to defendant under a contract which had been cancelled by plaintiff. Plaintiff relied upon compliance with section 617.3, The Code, to acquire jurisdiction of defendant.

This section in pertinent parts provides:

"Foreign corporations or nonresidents contracting or committing torts in Iowa * * *

"If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, * * * such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract * * *. The making of the con-

tract * * * shall be deemed to be the agreement of such corporation * * * that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa. * * *." The balance of this statute prescribes the procedures to be followed in making service of such process or original notice.

March 30, 1970, defendant caused a quotation of $67,640 for the manufacture and sale of a "Hydrel Precision Fine-Blanking Press" to be presented to plaintiff. June 5 plaintiff mailed an acceptance of the terms of the quotation with a $10,000 down payment, agreeing to pay the balance 90 days after "press is in operation." July 13 defendant received a letter from plaintiff cancelling the contract due to plaintiff's inability to acquire a bank loan for the purchase of the press. When defendant refused to return the down payment as demanded by plaintiff suit was instituted in the Scott district court.

Defendant filed a special appearance for the sole purpose of attacking the jurisdiction of the Scott district court alleging that:

"1. The Court does not have jurisdiction over the person of this Defendant for the reason that this Defendant has not made a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa.

"2. The attempted service of Original Notice violates the due process clause of the 14th Amendment to the Constitution of the United States.

"3. This Defendant has had no contacts in the State of Iowa which would subject it to the jurisdiction of the Iowa Courts.

"4. This Defendant has not transacted any business in the State of Iowa.

"In support of this Motion, Defendant relies upon the case of Rath Packing Co. v. Intercontinental Meat Traders, Inc., 181 N.W.2d 184 (Iowa 1970)."

Defendant raises no question as to plaintiff's having followed the mechanical provisions of giving notice under this section. Its sole claim is that the transaction between plaintiff and defendant does not give rise to a situation which would constitutionally permit use of the statute in acquiring in personam jurisdiction of a foreign corporation.

The record upon which the special appearance was considered consisted of the petition with attached copies of defendant's quotation, plaintiff's purchase order and letter of cancellation plus the affidavit of defendant's president in support of defendant's special appearance and the affidavit of plaintiff's president.

The trial court sustained the special appearance.

The issue presented for review is whether defendant had sufficient minimum contacts with Iowa so that the courts of this state could take jurisdiction of this action seeking a personal judgment without violating the due process clause of amendment 14 of the federal constitution.

I. At the outset, there was a conflict of evidence concerning defendant's contacts with the state. Plaintiff claims the facts are reviewable de novo, as this is an unjust enrichment case in equity, and thus the court should give less weight to the trial court's findings of fact than if the case were at law. Defendant claims this is an action at law.

Plaintiff's assertion is simply incorrect. The decision from which the appeal is taken is not determinative of any unjust enrichment issue, but is a ruling on defendant's special appearance challenging Iowa's personal jurisdiction over it. Thus, the following rules apply:

"In passing on a special appearance we accept the allegations of the petition as true. Plaintiff has the burden of sustaining the requisite jurisdiction, but once it has made a prima facie case, the burden is on defendant to produce evidence to rebut or overcome the prima facie showing. This is a special proceeding in which

the findings of the trial court have the force and effect of a jury verdict. * * * [citing authorities]." Rath Packing Co. v. International Meat Trad., Inc., 181 N.W.2d 184, 185 (Iowa 1970).

■ " * * * [A] hearing on special appearance is a special proceeding not reviewable de novo; and, the finding of the trial court has the force and effect of a jury verdict." Miller v. Vitalife Corporation of America, 173 N.W.2d 91, 92 (Iowa 1969). See also Tice v. Wilmington Chemical Corp., 259 Iowa 27, 35, 141 N.W.2d 616, 621, supplemented, 143 N.W.2d 86; Bennett v. Ida County, 203 N.W.2d 228, 234 (Iowa 1972); and Edmundson v. Miley Trailer Co., 211 N.W.2d 269, 271 (Iowa 1973).

■ And, this not being an equity action, "[t]rial court findings of fact * * * are binding on us if supported by substantial evidence. We view the evidence in its most favorable light to sustain those findings." Long v. Glidden Mutual Insurance Association, 215 N.W.2d 271, 272 (Iowa 1974).

II. Plaintiff maintains the existence of a contract to be performed in whole or in part within the state of Iowa is sufficient to satisfy the jurisdictional requirements of section 617.3, The Code, and if the contract also has substantial connections with the forum state, then the due process clause of amendment 14 of the federal constitution is likewise satisfied and a resident of the forum may maintain an action against a nonresident.

Plaintiff argues in the second division of its brief and argument that the quality and quantity of activities conducted by defendant in Iowa are clearly sufficient to satisfy due process. These contentions will be considered together.

■ It is sufficient to sustain the jurisdiction of this court if plaintiff makes a prima facie showing of the existence of a contract "to be performed in whole or in part" in Iowa. For this purpose the allegations of plaintiff's petition are accepted as true. Midwest Packaging Corporation v.

Oerlikon Plastics, Ltd. (D.C.1968), 279 F.Supp. 816, 818, and authorities cited.

■ Plaintiff made a prima facie showing of the existence of a contract between plaintiff, a resident of Iowa, and defendant, a foreign corporation, by alleging the making of the offer by defendant to manufacture and sell to plaintiff a specified press for $67,640 and acceptance of that offer by plaintiff by mailing its purchase order to defendant for the machine with a down payment of $10,000 and a promise to pay the balance 90 days after the "press is in operation."

Under the terms of the contract, as accepted, defendant warranteed the press for six months and agreed to repair the press, if requested, after the warranty by the following provisions in its offer:

"MACHINERY

"a.) Warranty: Of within a period of 6 months or 1 million strokes, whichever occurs first, from the date of shipment, any part of the presses is found to be defective in material or workmanship, we will replace or repair such part at our option, as determined after our inspection, provided the machine has been given normal and proper usage, maintenance and care and is still the property of the original purchaser. In the event of defect, our liability, under any circumstances will be limited to the cost of replacement or repair of the parts as per our above option. It shall be further agreed that the seller shall in no event be liable for consequential damages.

"b.) Service: Should service such as erection, demonstration or repair of any machine be requested beyond that specifically included in the quoted price, such service will be rendered at a charge per man per day plus transportation and living expenses."

It cannot be logically denied that the contract alleged by plaintiff was to be performed "in whole or in part" in Iowa. By necessity performance of many of defendant's obligations under the foregoing war-

ranty and service agreements would be performed in Davenport.

Although the prima facie showing made here is sufficient to give the court jurisdiction under the provisions of section 617.3, The Code, the question remains whether, under the evidence, an exercise of such jurisdiction would violate the constitutional guarantee of due process.

The following statements of principle made in International Shoe Company v. State of Washington, 326 U.S. 310, 316–319, 66 S.Ct. 154, 158–160, 90 L.Ed. 95, 102–104, are quoted with approval in *Rath*, 181 N.W.2d at 187–188:

" * * * [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * * [citing authorities].

" * * *

" * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * * [citing authorities].

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * * [citing authorities]."

■ In this connection, a nonresident may be sued on a contract which had "substantial connection with that State." McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226.

In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298, the United States Supreme Court injected the caveat that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." See also *Rath*, 181 N.W.2d at 188.

"The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492.

In Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 368 and Aftanase v. Economy Baler Company, 343 F.2d 187, 197 the Eighth Circuit gleaned from the above cases five factors to be considered in determining whether the "fair play and substantial justice" requirements are satisfied, the first three being most important:

(1) The quantity of the contacts;

(2) The nature and quality of the contacts;

(3) The source and connection of the cause of action with those contacts;

(4) The interest of the forum state; and

(5) Convenience.

See also Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. 1168, 1176 (S.D.Iowa 1972).

Similar factors, some essential and others having weight, to be considered in determining whether the test of "minimum contacts" and "fair play" has been met are set forth in Byham v. National Cibo House Corporation, 265 N.C. 50, 143 S.E.2d 225, 231–232, 23 A.L.R.3d 537, 545–546.

In its ruling on defendant's special appearance the trial court found that "prior to the execution of the order by plaintiff and during the negotiations leading up to the alleged contract, representatives of defendant, including the president of defendant corporation, came to the state of Iowa in an attempt to sell the plaintiff merchandise."

The court concluded if plaintiff's action were based on a claim for damages arising from defendant's delivery of a defective product or on one seeking recovery due to defendant's performance in some other respects under the contract, sufficient minimum contacts were had by defendant in the state of Iowa to subject it to jurisdiction of the Iowa courts. However, the trial court was of the opinion plaintiff's action was based "upon a matter outside the contract, that is, plaintiff's unilateral cancellation of the contract" which placed plaintiff in the position of a resident seller of merchandise to a nonresident buyer; hence, much greater minimum contacts had to be shown by defendant with the state of Iowa than was shown in the present case before the foreign corporation could be subjected to in personam jurisdiction of the Iowa courts.

In support of the trial court's ruling defendant points to the fact that nowhere is there any allegation of wrongdoing, breach of contract or breach of warranty on the part of defendant. Defendant maintains the trial court merely stated plaintiff could not retain its favored position as a resident buyer from a nonresident seller in view of its cancellation of the contract.

We agree with the trial court's finding sufficient minimum contacts were had by defendant in the state of Iowa to subject it to jurisdiction of the Iowa courts if plaintiff's claim were in fact based on a claim for damages due to defendant's delivery of a defective product or due to defendant's performance in some other respects under the contract.

■ In this connection it is to be noted verified affidavits may be submitted supporting or in opposition to a special appearance and· when affidavits are so filed the contents stand as a verity unless controverted. Tice v. Wilmington Chemical Corp., 259 Iowa 27, 34, 141 N.W.2d 616, 621.

The trial court's conclusion regarding plaintiff's status similar to a nonresident seller was expressly based on the seller-buyer distinction articulated in *Rath,* 181 N.W.2d at 188–189, where the court pointed out if the action is against a nonresident seller, plaintiff can also rely on the rule that an act outside the forum state which produces consequences in the state is sufficient to give it judicial jurisdiction since the state has an interest in protecting its citizens from damages sustained from a product brought into the state which is not present when a resident seller seeks to collect for a product shipped out of the state.

Assuming without deciding defendant is correct in asserting the court was merely saying plaintiff could not retain its favored position as a resident buyer from a nonresident seller in view of plaintiff's cancellation of the contract the problem is whether, when considered in the light of the key factors abstracted by the Court of Appeals from the Eighth Circuit set out earlier, due process standards have been complied with in the case before us.

■ The court can look to future activities contemplated in the contract for the purpose of determining defendant's contacts with the forum state. Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. at 1177.

■ Defendant purposefully availed itself of the privilege of conducting activities within the state when its representatives came into the state of Iowa in an attempt to sell plaintiff merchandise prior to the

execution of the order by plaintiff and during the negotiations leading to the contract involved, thus invoking the benefits and protections of the laws of this state. Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

■ The exercise of that privilege led to the formation of a contract stemming from defendant's offer which contemplated a continuous course of future activity by defendant within the state of Iowa for an indefinite period of time. Defendant could reasonably have anticipated that its entering into the contract with plaintiff would result in material consequences in Iowa. Aftanase v. Economy Baler Company, 343 F.2d at 197.

As pointed out, many of the acts required to be performed by defendant under the warranty and service provisions of the contract were to be performed in the state of Iowa. The warranty provisions extended for "a period of 6 months or 1 million strokes, whichever occurs first, from the date of shipment." Defendant's obligation under the service provision has no time limit. In the event plaintiff refused or neglected to pay defendant's charges for services performed in accordance with the terms of the contract defendant would have had to use the Iowa courts to enforce plaintiff's obligation thereunder.

Although defendant has not carried on a continuous and systematic course of activity in this state the activity reasonably contemplated under the terms of the contract must be characterized as substantial by any test. See Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. at 1177.

■ We disagree with the trial court's conclusion plaintiff's action is based upon a matter outside the contract. The suit seeks refund of a down payment made by plaintiff to defendant at the time of accepting defendant's offer. If there had been no offer and acceptance resulting in a contract between the parties plaintiff would not be seeking a recovery of the down payment.

■ The state of Iowa has an interest in providing effective redress for its residents.

■ In our opinion the exercise of in personam jurisdiction .over defendant by the Iowa court does not offend "traditional notions of fair play and substantial justice." The trial court erred in concluding otherwise.

■ III. In seeking to uphold the trial court's ruling defendant seeks use of the doctrine of *forum non conveniens* on the bases plaintiff "instigated the entire controversy and expense" by his own actions and that New York would be the more convenient forum since the greater amount of evidence is situated there. As stated in division II, convenience is one of the five factors, albeit one of lesser importance, to be considered in exercising in personam jurisdiction over a foreign defendant.

"The principle of *forum non conveniens* establishes the right of a court to resist imposition upon its jurisdiction although such jurisdiction could properly be invoked. It presupposes that there are at least two possible choices of forum." Cray v. General Motors Corporation, 389 Mich. 382, 207 N.W.2d 393, 398. See also Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055.

"Although the doctrine of forum non conveniens can be invoked when the facts of the particular case show it would be inequitable to take jurisdiction of a cause of action even though the court might have the power to do so, it is rarely applied. * * * [citing authorities]." *Rath,* supra, 181 N.W.2d at 189–190.

" * * * It is only in those exceptional cases where a weighing of all the many relevant factors, of which ·residence is but part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice, that the doctrine is ever invoked." Gore v. United States Steel Corp., 15 N.J. 301, 104 A.2d 670, 676. See also Gonzales v. Atchison, Topeka and San-

ta Fe Railway Co., 189 Kan. 689, 371 P.2d 193, 199.

Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. at 1178 has this statement: "The factor of convenience of the parties is not of great weight in the due process cases, except when other factors are equivocal. * * * [citing authority]. The Supreme Court of the United States has held this factor to be of minute significance. McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)."

The evidence here did not show the relative inconveniences were so unbalanced that we should deny jurisdiction under this doctrine.

With directions to the trial court to set aside its order sustaining defendant's special appearance and for the parties to proceed in this matter in accordance with the Rules of Civil Procedure the case is

Reversed and remanded with directions.