**KAGIN'S NUMISMATIC AUCTIONS, INC., Appellant,**

v.

**Grover C. CRISWELL, Appellee.**

No. 2–63012.

Supreme Court of Iowa.

Oct. 17, 1979.

Steven E. Zumbach, Philip E. Stoffregen, and Roger T. Stetson, and Christopher W.

Tompkins of Belin, Harris, Helmick & Lovrien, Des Moines, for appellant.

Marsha K. Ternus of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and LARSON, JJ.

UHLENHOPP, Justice.

The issue in this appeal is whether the Iowa District Court acquired in personam jurisdiction over the defendant. More specifically, the question is whether acquisition of jurisdiction is statutorily authorized and not constitutionally proscribed.

Our scope of review in cases of this kind we stated thus in *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 185 (Iowa 1970):

In passing on a special appearance we accept the allegations of the petition as true. Plaintiff has the burden of sustaining the requisite jurisdiction, but once it has made a prima facie case, the burden is on defendant to produce evidence to rebut or overcome the prima facie showing. This is a special proceeding in which the findings of the trial court have the force and effect of a jury verdict. (Citations omitted.)

We have also said, "Of course, we are not bound by the trial court's conclusions of law or by its application of legal principles." *DeCook v. Environmental Security Corp.*, 258 N.W.2d 721, 726 (Iowa 1977) (citations omitted).

The record in this case consists of the petition and affidavit of plaintiff Kagin's Numismatic Auctions, Inc.; the resistance and affidavit of defendant Grover C. Criswell; and a contract signed by the parties. These documents reveal the following uncontroverted facts.

The action is based on an auction and receipt agreement between plaintiff Kagin's Numismatic Auctions, Inc., an Iowa corporation with its principal place of business in Polk County, and defendant Grover C. Criswell, a resident of Citra, Florida.

Kagin's initially contacted Criswell about entering into a contract for Kagin's to sell Criswell's coins at auction at a coin show to be held in Georgia. Thereafter the terms of the agreement were negotiated through "two or three" telephone calls Criswell made from Florida to Iowa. Kagin's then mailed the contract to Criswell's Florida address, where Criswell signed it on April 13, 1977.

The contract provided that Kagin's would sell at auction a set of "Sutler currency" owned by Criswell in return for twenty percent commission. The auction was to occur approximately four months later at an American Numismatic Association sale in Atlanta, Georgia. Kagin's agreed to hold the currency in the meantime at its own risk, and to issue a catalogue of the coins. Criswell was to receive as security for the coins a cash advance of $35,000, on which interest was to accrue in Kagin's favor at the rate of nine and one-half percent per annum. Kagin's commission was to be deducted from the sale price, and the difference was to be reduced by Kagin's cash advance and interest to ascertain the amount owing Criswell after the sale.

Pursuant to the agreement, Kagin's mailed the cash advance of $35,000 to Criswell's Florida residence. Criswell shipped the Sutler currency to Iowa. After receiving the coins in Iowa, Kagin's catalogued and prepared them for sale. The catalogue was printed in Iowa, and Kagin's held the coins in Iowa until selling them at the Atlanta auction. Payments have been made under the contract, but a dispute has arisen regarding Criswell's liability for return of part of the cash advance and for interest and commission.

I. *Jurisdiction of appeal.* Before proceeding to the merits we consider a jurisdictional problem in this court. Criswell filed a special appearance in district court and supported it by affidavit. Kagin's filed a resistance and supported it by affidavit. When the file was handed to Judge Crouch for ruling, Kagin's resistance and affidavit were inadvertently left out of the file. On November 6, 1978, the court sustained the

special appearance. On November 9, 1978, Kagin's attorney moved for reconsideration of the ruling, with the court to consider also Kagin's resistance and affidavit. On December 18, 1978, Judge Crouch took up that motion and reconsidered the special appearance with the resistance and affidavit as part of the record. He reached the same result, however, and again sustained the special appearance. On January 15, 1979, Kagin's filed notice of appeal.

■ A decision sustaining a special appearance is appealable. *Boye v. Mellerup,* 229 N.W.2d 719, 720 (Iowa 1975). The party has 30 days in which to appeal. Iowa R.App.P. 5(*a*). The problem is that Kagin's filed notice of appeal within 30 days of the second sustention of the special appearance but not within 30 days of the first sustention.

Rule 179(*b*) of our Rules of Civil Procedure, however, authorizes motions to enlarge and amend findings and conclusions and to modify the judgment or substitute a different one, and rule 5(*a*) of our Rules of Appellate Procedure permits an appeal to be taken within 30 days after the ruling on such a motion. We look to the substance of a motion and not to its name; if it is actually a motion within rule 179(*b*), we so hold. *See Sykes v. Iowa Power & Light Co.,* 263 N.W.2d 551, 553 (Iowa 1978) (the particular motion to reconsider came within rule 179(*b*)).

■ Rule 179 applies only when the court is "trying an issue of fact without a jury." *Budde v. City Development Board,* 276 N.W.2d 846, 851 (Iowa 1979) (rule not applicable to judicial review hearing). *See also City of Eldridge v. Caterpillar Tractor Co.,* 270 N.W.2d 637, 640 (Iowa 1978) (rule not applicable to summary judgment proceeding). The question therefore is whether a court tries an issue of fact without a jury in a special appearance proceeding.

We think it does. The hearing and disposition of a special appearance is a special proceeding; upon the materials and any testimony presented, the trial court finds the facts, draws conclusions of law, and enters its decision. *See, e. g., DeCook v. Environmental Security Corp.,* 258 N.W.2d 721, 724 (Iowa 1977); *Rath Packing Co. v. International Meat Traders Inc.,* 181 N.W.2d 184, 185–87 (Iowa 1970). We believe that a special appearance proceeding comes within the purview of rule 179. While the facts in this case are not controverted, the district court nonetheless had to find the facts. We thus conclude that Kagin's motion to reconsider was a motion within the meaning of rule 179, and that time for appeal ran from the ruling on that motion. The appeal was timely and we have jurisdiction of the appeal.

■ II. *Statutory basis for jurisdiction of district court.* Proceeding to the merits, statutory authorization for an Iowa court's assertion of in personam jurisdiction over Criswell rests on section 617.3 of The Code. That section provides in pertinent part:

If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa . . . such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section . . . .

(*See* alternate Iowa R.Civ.P. 56.2.) In the absence of an express contractual provision that performance was to occur in Iowa, we have applied section 617.3 to a contract dispute where by necessity performance was to occur here. *See Douglas Machine & Engineering Co. v. Hyflow Blanking Press Corp.,* 229 N.W.2d 784, 788 (Iowa 1975).

That the contract before us was in fact performed in part in Iowa is beyond question. Although not *expressly* stated in the written contract, was Kagin's to part-perform the contract in Iowa? We think so. The facts are not in dispute and we adopt them as found by the trial court. The question relates to the legal conclusion to be drawn from them—the construction of the contract and the legal effect of the incidents of the contract upon acquisition of jurisdiction.

Kagin's is an Iowa corporation with its principal place of business in Iowa. The

auction contract required Kagin's to issue a catalogue covering the Sutler currency prior to its sale and to hold the coins at its own risk until the time of the Atlanta auction. Criswell sent the currency to Kagin's Iowa place of business approximately four months before the auction was to occur. If the parties did not expect Kagin's to part-perform in Iowa, why did Criswell ship the coins to Kagin's place of business in Iowa? Criswell knew Kagin's had to catalogue the coins for the later sale. Criswell also knew Kagin's principal place of business was at the city where he sent the coins. Donald Kagin's uncontradicted affidavit states, "Upon numerous occasions in the past, the defendant has corresponded and conferred by telephone with me or my father, A. M. Kagin, at our business address here in Iowa." We believe that under the contract the preparation of the catalogue and the storage of the coins pending sale was to take place in Iowa.

Our finding that the auction contract was to be performed "in part" in Iowa is supported by prior construction of section 617.-3. Particularly relevant is *Midwest Packaging Corp. v. Oerlikon Plastics, Ltd.*, 279 F.Supp. 816 (S.D.Iowa 1968). There the complaint was for breach of an exclusive sales franchise which an Iowa plaintiff contended arose out of negotiations with a New York corporation. As here, the contract apparently did not contain an express requirement that performance was to occur in Iowa. In applying section 617.3 to the facts there, the court stated, 279 F.Supp. at 818:

> [I]t cannot be denied that the contract as alleged by plaintiff was to be performed "in whole or in part" in Iowa. Plaintiff is an Iowa corporation with its principal place of business in Iowa. Therefore, *by necessity*, many of the acts required for performance of the alleged exclusive sales contract would take place in Iowa. (Emphasis added.)

Criswell cites two decisions in support of his contention that the auction contract was not to be performed, even in part, in Iowa. The first is *Creative Communication Con-sultants, Inc. v. Byers Transportation Co.*, 229 N.W.2d 266, 269 (Iowa 1975). We there declined to assert personal jurisdiction over a Missouri defendant in a dispute concerning a contract by which an Iowa corporation agreed to render certain expert communication and telephone services. The second case is *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 854, 528 P.2d 1248, 1252 (1974). There the Kansas Supreme Court declined to assert personal jurisdiction over an Illinois corporation that had arranged to purchase fuel tank liners from a Kansas corporation.

*Creative Communication* does not appear applicable here. The Iowa plaintiff did not controvert the foreign defendant's sworn statement that the contract was to be entirely performed in Missouri. We accepted as true the contents of the uncontroverted affidavits when ruling on the special appearance, and nothing was left in the case for us to decide.

The same is not true of the case at hand. Kagin's specifically claimed that the auction contract was to be performed in part in Iowa. *Creative Communications* does not support Criswell's argument that section 617.3 is inapplicable to this case.

Nor can Criswell find support in *Misco-United Supply, Inc. v. Richards of Rockford, Inc.* There the Supreme Court of Kansas was asked to apply a statute very similar on its face to section 617.3. The statute conferred personal jurisdiction over any foreign defendant who had entered into a contract "to be performed in whole or in part by either party in this state." 215 Kan. at 851, 528 P.2d at 1250. In construing that statute, however, the Kansas Supreme Court was guided by a "clearly reflected legislative intention to exert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment." *Id.* Thus, the Kansas court engaged in a one-step analysis in which it considered only the *constitutionality* of asserting in personam jurisdiction over the defendant. In contrast, we analyze such cases in a two-step procedure, applying our statute first and

then considering the constitutional issue. We continue to follow that method and therefore decline to examine *Misco* more closely at this point. We will however say more about *Misco's* constitutional analysis.

III. *Constitutionality of asserting jurisdiction over Criswell.* The constitutional limitations upon a state's ability to assert in personam jurisdiction over a foreign defendant have been outlined in three often-cited United States Supreme Court cases. In *International Shoe Co. v. Washington* the Court held

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03 (1945). In the later case of *McGee v. International Life Insurance Co.*, the Court construed *International Shoe* to require in a contract action that the contract have a "substantial connection" with the state which is asserting jurisdiction. 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). Then in *Hanson v. Denckla*, the Court further refined the *International Shoe* standard in the following manner:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

To apply these principles we must enumerate Criswell's contacts with this state resulting from his contract with Kagin's. The district court made the following find-ings of fact: Criswell communicated by telephone with Kagin's Iowa address while negotiating the contract; Criswell shipped the Sutler currency to Iowa; Kagin's took receipt of the coins in Iowa and sent Criswell its cash advance from Iowa; Kagin's prepared the coins in Iowa for sale; the catalogue contemplated by the contract was prepared and printed in Iowa; and Criswell's coins were held in Iowa, at Kagin's risk, until the Georgia sale. The constitutionality of exercising in personam jurisdiction over Criswell stands or falls on these findings.

We first consider whether Criswell "purposefully availed" himself of the "privilege of conducting activities" within Iowa so as to "invoke the benefits and protections" of Iowa law. We answer that question in the affirmative. Criswell contracted with an Iowa business for the preparation and sale of coins, Criswell then sent the coins to Iowa, Kagin's prepared them for sale, and Kagin's kept Criswell's coins at its own risk until the later sale. By sending his goods into Iowa to be held at the risk of an Iowa business, Criswell availed himself of the protection of Iowa law. *See Washington Scientific Industries, Inc. v. Polan Industries, Inc.*, 273 F.Supp. 344, 348 (D.Minn. 1967). Moreover, by entering into such a contract Criswell must have realized that Iowa substantive law might well be applied to questions of performance. *Id.* Criswell purposefully availed himself of the benefits and protections of Iowa law. We do not at this time pass upon the conflict of laws questions which may arise at trial.

We next consider whether this state's assertion of in personam jurisdiction over Criswell meets the *International Shoe* requirement of "fair play and substantial justice." In determining whether this standard is·met, we have said we look to five factors, the first three being most important:

(1) The quantity of the contacts;

(2) The nature and quality of the contacts;

(3) The source and connection of the cause of action with those contacts;

(4) The interest of the forum state; and

(5) Convenience.

*Douglas Machine & Engineering Co.*, 229 N.W.2d 784, 789 (Iowa 1975).

Applying these criteria, we conclude that the assumption of jurisdiction in this case does not offend traditional notions of fair play and substantial justice. In reaching that conclusion we are influenced by decisions from other jurisdictions. The first is *Washington Scientific Industries, Inc. v. Polan Industries, Inc.*, 273 F.Supp. 344 (D.Minn.1967), and the other is *Ward v. Formex, Inc.*, 27 Ill.App.3d 22, 325 N.E.2d 812 (1975).

In *Washington* a Minnesota plaintiff asked a federal district court in Minnesota to exercise in personam jurisdiction over a West Virginia defendant. The plaintiff had contracted to perform certain services, in the nature of machining the defendant's component parts of tank periscopes. The defendant sent the parts to the Minnesota plaintiff, who was to perform the services and then return the parts to the defendant in Virginia. In analyzing the "fair play and substantial justice" issue the court, after identifying the same factors that we have recognized as relevant in deciding issues of this kind, arrived at the following decision, 273 F.Supp. at 348:

> [I]t is concluded that assumption of jurisdiction in this case does not offend traditional notions of fair play and substantial justice. Not only did defendant contract with a Minnesota corporation, but under the contract the goods were shipped into this state. The plaintiff performed the services under the contract applying time and labor and according to the complaint sustaining injury in the state through equipment wear and breakage and through loss of other business. Representatives of defendant traveled to the state to supervise performance of the contract. When performance was completed the goods were shipped from Minnesota.

Although the *Washington* case involved additional factors, we find it similar to the present one in significant respects. As in *Washington,* Criswell contracted with a corporation of the forum state and shipped the goods to Kagin's in the forum state so that Kagin's could perform services required by the contract. Unlike *Washington,* however, Criswell was at no time present in the forum state, but we have recognized that physical presence in the forum state is not prerequisite to the extension of in personam jurisdiction. *See Norton v. Local Loan,* 251 N.W.2d 520, 522 (Iowa 1977). We do not believe this difference alone renders the *Washington* opinion inapplicable here.

In *Ward v. Formex, Inc.* an Illinois plaintiff asked an Illinois court to exert in personam jurisdiction over a Nevada defendant. The first contact between the parties occurred at a trade fair in Louisville, Kentucky, where they discussed the possibility of the plaintiff's producing an industrial film which was to be shot in Nevada for the defendant. 27 Ill.App.3d at 23, 325 N.E.2d at 813. The parties then reached a final agreement via letters and telephone conversations between the defendant in Nevada and the plaintiff in Illinois. The plaintiff subsequently shot the film in Nevada, and then returned to Illinois where the film was processed, edited, reworked, mounted, and printed. When the defendant, after mailing three payments on the contract to the plaintiff in Illinois, refused to pay the balance claimed to be owing, the plaintiff filed suit in an Illinois court. In applying the *International Shoe* standard the Illinois Appellate Court reasoned thus, *id.* at 25, 325 N.E.2d at 815:

> In the case before us negotiations for the work were concluded through letters and telephone calls to Illinois, the major part of the work was performed in Illinois and partial payment was made in Illinois. We believe that under the present broadened concept of the limits imposed by due process the facts of this case present sufficient connection with Illinois to invoke jurisdiction under our statute.

We believe the Illinois court's reasoning in *Ward* to be applicable here. As in *Ward,* Kagin's contracted to render services to a foreign defendant after negotiations which

included telephone conversations with Kagin's in the forum state. As the plaintiff did in *Ward*, Kagin's performed a portion of its contractual obligations in the forum state. Although we hesitate to label such actions as the "major part" of Kagin's obligation, the cataloging and preparation of the coins for sale was a material part of the plaintiff's performance and prerequisite to the ultimate sale of the coins at the best price. We also have the pre-sale storage of Criswell's coins here and, similar to *Ward*, partial payments to Kagin's in the forum state. On these facts we find *Ward v. Formex* to be indistinguishable in a significant way.

Criswell cites a number of cases in support of his contention that he may not constitutionally be subjected to Iowa in personam jurisdiction. We have considered each of these cases and find their reasoning inapplicable.

The Iowa case relied on heavily by Criswell is *Rath Packing Co. v. International Meat Traders*, 181 N.W.2d 184 (Iowa 1970). In *Rath* this court refused to find Iowa in personam jurisdiction over an Illinois corporation on the basis of the corporation's agreement to purchase frozen pork skins from Rath, a business in Waterloo, Iowa. Both the contractual negotiations as well as specific orders under the contract were made through an Illinois middleman. *Rath*, 181 N.W.2d at 186. Upon receiving the order from the middleman, the Iowa plaintiff was required to load the pork skins on rail cars in Waterloo, obtain a bill of lading from the carrier, and forward it along with a sight draft to the defendant's Chicago bank. The defendant would then pay the draft and receive the bill of lading entitling it or its consignee to possession at the destination. On two occasions shipments were made to Iowa destinations, but these were for the benefit and at the request of the Iowa plaintiff. In the course of performance, the defendant's president made one trip at the plaintiff's request to the Iowa plant, to investigate alleged problems with the quality of the pork skins. On those facts, this court found *McGee's* sufficient minimum contacts requirement was not met.

*Rath* is distinguishable from this case in material respects which render its application to these facts inappropriate. Unlike the defendant in *Rath*, which conducted its business with the Iowa corporation through an Illinois middleman, Criswell directly negotiated with Kagin's by telephone calls to this state. Also unlike *Rath*, in which the only shipments to an Iowa address were for the benefit and at the request of the Iowa plaintiff, Criswell's shipment of coins into Iowa appears to have been for the mutual benefit of the parties; it facilitated the cataloging and preparation of the coins for sale, and it entitled Criswell to a cash advance of $35,000 on the proceeds of the ultimate sale. The vital distinction is that the skins Rath possessed in Iowa were Rath's skins; but the coins Kagin's possessed in Iowa were Criswell's coins, sent into this state by Criswell himself. Criswell's contacts with Iowa were more direct and substantial then the defendant's contacts in *Rath*. As a result, maintenance of this suit in Iowa does not offend traditional notions of fair play and substantial justice.

Two additional cases cited by Criswell are distinguishable in that the foreign defendants neither communicated with the respective plaintiffs within the forum states during the negotiation of their contracts nor did they transport any goods into or out of the forum states. For example, in *Hanson v. Denckla* the United States Supreme Court held that a Florida court could not constitutionally assert in personam jurisdiction over a Delaware trustee where none of the trust assets had ever been held or administered in Florida and the trust instrument had been executed by a settlor while living in Delaware. 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958). Similarly, in *United Advertising Agency, Inc. v. Robb*, a federal district court in North Carolina refused to assert in personam jurisdiction over Kansas and Missouri defendants who had allegedly contracted with a North Carolina advertising agency, where nothing belonging to the defendants had ever entered the forum state and "no

evidence [was introduced] that the defendants made any repeated contact with North Carolina either with reference to the solicitation, negotiation, performance or implementation of the contract." 391 F.Supp. 626, 630 (M.D.N.C.1975).

Another case cited by Criswell is *Belmont Industries, Inc. v. Superior Court*, 31 Cal. App.3d 281, 107 Cal.Rptr. 237 (1973). That case is distinguishable on the basis of the defendant's lack of significant contacts with the forum state during the negotiation and performance of the contract at issue there. During the negotiation of the contract the foreign defendant's initial contact with the forum state was a single telephone call inviting the plaintiff to submit a bid for drafting work. When the. defendant received the bid at its foreign place of business, it requested the plaintiff to send a representative there to confer about the job. The defendant's subsequent sole contact with the forum was the mailing of a written purchase order confirming the award of the contract to the plaintiff. *Belmont* lacked important factors which are present here: continued negotiations involving telephone calls into Iowa and shipment of the coins into Iowa—in addition to the cataloging, preparing, and storing the coins here pending the auction.

We previously adverted to *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974). There the plaintiff was a Kansas corporation which had agreed to sell to the defendant, an Illinois corporation, five flexible liners for storage tanks. Since the defendant did not make liners, it ordered the materials for them from a manufacturer in North Carolina, contracted with fabricators in various other states for the construction of the liners, and hired an Illinois contractor to install the liners in the defendant's tanks. In holding that due process would not allow a Kansas court to exercise in personam jurisdiction over the Illinois defendant, the Kansas Supreme Court noted that the entire performance under the contract occurred in states other than Kansas. *Id.* at 854, 528 P.2d at 1252–53. No manufacturing took place in Kansas, and the goods were never brought into the state.

The present set of facts obviously presents a materially different situation. The auction contract was partially performed in Iowa, and the goods named in the contract were sent into this state by Criswell himself, to be worked with by Kagin's and to be held for almost four months prior to sale. We find *Misco* inapplicable.

We conclude that under the two-step test, the Iowa District Court acquired jurisdiction of Criswell. We thus return the case to the district court for further proceedings in accordance with the Rules of Civil Procedure.

REVERSED.