Dale Alan BARRETT, Albert Elzie Barrett and Wilma Berniece Barrett, Appellees,

v.

Al BRYANT, a/k/a Alvin Bryant, B. J. Cherry, Jr., a/k/a Billy Cherry, Preston Webb, Paul Duke, Mitchell Engineering Company, a division of the Ceco Corporation, and the Ceco Corporation, Appellants.

No. 63200.

Supreme Court of Iowa.

April 23, 1980.

Craig D. Warner of Pryor, Riley, Jones & Aspelmeier, Burlington, for appellants.

Thomas S. Reavely of Reavely & Dowell, Mount Pleasant, and Kenneth L. Keith of Dull, Keith & Beaver, Ottumwa, for appellees.

Considered by HARRIS, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

McCORMICK, Justice.

We granted interlocutory appeal to review the correctness of the trial court's order overruling defendants' special appearances challenging the court's jurisdiction over them under the long-arm statute, § 617.3, The Code. We affirm in part, vacate in part, and reverse in part.

The questions relate to the use of discovery to obtain evidence on the jurisdictional issue, compliance with section 617.3, and compliance with the due process clause of U.S.Const. amend. XIV.

Plaintiff Dale Alan Barrett was an employee of defendant Mitchell Engineering Company (Mitchell), a division of The Ceco Corporation (Ceco), who was injured in a fall on November 1, 1976, while helping put a roof on a steel building being erected by Mitchell in Mount Pleasant, Iowa. He and his parents Albert Elzie Barrett and Wilma Berniece Barrett brought this tort action against Mitchell, Ceco and seven co-employees, accusing them of gross negligence which plaintiffs alleged proximately caused

Dale's injuries and damages. *See* § 85.20, The Code. Mitchell and defendants Al Bryant, B. J. Cherry, Jr., Preston Webb, Paul Duke and Charles Waldron entered special appearances. After hearing, all the special appearances except that of Waldron were overruled. We are asked to reverse the ruling as to defendants Mitchell, Bryant, Cherry, Webb and Duke.

I. *The discovery issue.* Plaintiffs alleged in their petition that Mitchell was a division of The Ceco Corporation. In appearing specially, Mitchell submitted an affidavit in which the secretary of Ceco averred Mitchell was a division of Ceco as alleged but was not a corporation, partnership, individual or any other form of suable legal entity. In resisting the special appearance, plaintiffs alleged the court had insufficient information upon which to rule and requested the opportunity to establish Mitchell's identity through discovery. The court held that the legal status of Mitchell could best be determined through discovery, after which it could renew its jurisdictional attack "by appropriate motion." Mitchell's special appearance was overruled.

The grounds alleged by defendants Bryant, Cherry, Webb and Duke in their special appearances included contentions that the statutory basis for asserting jurisdiction over them under section 617.3 did not exist and that their contacts with Iowa were insufficient to authorize service upon them consistent with the due process clause of the fourteenth amendment. Plaintiffs' resistance to these special appearances did not include a request for opportunity for discovery. Nevertheless, the trial court overruled the special appearances after concluding that "these matters can be more appropriately considered by the Court after the parties have had the benefit of discovery."

Defendants contend the court erred in overruling the special appearances on the ground of the need for discovery. We have not previously been required to decide whether a trial court has authority to order discovery before ruling on a special appearance and, if so, what procedures should be used. However, we find guidance in resolving these issues in cases decided under analogous Fed.R.Civ.P. 12(b)(2) and 12(b)(5).

Federal cases uniformly recognize the discretion of the trial court to order discovery on the jurisdictional issue. *See, e. g., Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir. 1977); *Surpitski v. Hughes-Keenan Corp.,* 362 F.2d 254, 255–56 (1st Cir. 1966). *See generally* 4 J. Moore, *Federal Practice* ¶ 30.52[5] (2d ed. 1979); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2009, at 52–54 (1970).

However, this discretion has limits. Discovery should not be allowed when the pleadings and other evidence show there is no disputed issue of material fact. *See, e. g., Wells Fargo,* 556 F.2d at 430 n. 24; *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories,* 384 F.2d 97, 97–98 (2d Cir. 1967). When discovery is ordered, it should ordinarily be limited to the contested jurisdictional issues. *See* 8 C. Wright & A. Miller, *supra* § 2009, at 52–54. Reversal is appropriate only when the court's discretion has been abused. *Wells Fargo,* 556 F.2d at 430 n. 24; *H. L. Moore,* 384 F.2d at 97.

One other principle is relevant here. The need for discovery is a basis for deferring ruling on the special appearance rather than a ground for overruling it. Moreover, as under Iowa R.Civ.P. 117, the issue should ordinarily be resolved in advance of trial. *See* Fed.R.Civ.P. 12(d); 2A J. Moore, *supra* ¶ 12.16, at 2352–54; 5 C. Wright & A. Miller, *supra* § 1373, at 708–09.

We hold that these principles also apply under our rules.

Applying them here, we conclude that the court erred in overruling the special appearances on the ground of the need for discovery although it would not have abused its discretion in deferring ruling on Mitchell's special appearance to permit plaintiffs to seek discovery of Mitchell's legal status.

As to Mitchell, we recognized a right of discovery in analogous circumstances in the summary judgment context in *Carter v. Jernigan*, 227 N.W.2d 131, 135–36 (Iowa 1975). Even though the uncontroverted allegations of an affidavit are accepted as true for purposes of ruling on a special appearance, *Creative Communications Consultants, Inc. v. Byers Transportation Co.*, 229 N.W.2d 266, 268 (Iowa 1975), it is premature to characterize Mitchell's affidavit as uncontroverted. Whether it would be controverted upon submission of the special appearance for ruling would depend on the outcome of discovery. Plaintiffs sought discovery to determine the truth of Mitchell's allegations. They are not foreclosed from doing so merely because they did not deny the allegations in advance. We are unwilling to say the trial court abused its discretion in holding that plaintiffs should be allowed discovery to investigate Mitchell's legal status. Therefore, instead of reversing the order as to Mitchell, we vacate it to allow plaintiffs the opportunity for discovery, after which the trial court may rule anew on Mitchell's special appearance.

The court was not justified in perceiving a need for discovery as to the special appearances of the individual defendants. Plaintiffs had put the facts in the record upon which they relied for jurisdiction, and they did not request discovery.

For purposes of ruling on a special appearance, the allegations of the petition are accepted as true in establishing a prima facie case. Once the plaintiff has made a prima facie case, the burden is on the defendant to rebut or overcome the prima facie showing. *Kagin's Numismatic Auctions, Inc. v. Criswell*, 284 N.W.2d 224, 225 (Iowa 1979).

In this case, the petition alleged that the individual defendants committed "a tort in whole or in part in Iowa against a resident of Iowa." This is a predicate for jurisdiction over nonresidents in section 617.3. A tort is committed in part in Iowa within the meaning of that provision when the injury occurs here. *Andersen v. National Presto Industries, Inc.*, 257 Iowa 911, 916, 135 N.W.2d 639, 641–42 (1965). Thus a prima facie showing of a statutory basis for jurisdiction existed. Moreover, under the record made by the petition, the special appearances of the individuals, their affidavits, plaintiffs' resistance, and plaintiffs' affidavit, no factual issue existed as to the susceptibility of the individuals to jurisdiction under the due process clause. The dispute was a legal one. Therefore the trial court erred in holding on its own motion that decision of the statutory and constitutional issues should await discovery.

II. *The section 617.3 issue.* Defendants Bryant, Cherry, Webb and Duke contend their special appearances should have been sustained because the requirements of section 617.3 were not met as to them.

As we have noted, plaintiffs made a prima facie case for applicability of section 617.3 through the allegations of their petition. The individual defendants contend they cannot be reached under the statute because they were acting within the scope of their employment with Ceco at the time of the tortious acts and jurisdiction over them cannot be predicated merely upon jurisdiction of the corporation. They thus rely on the statutory branch of the corporate cloak doctrine referred to in *DeCook v. Environmental Security Corporation, Inc.*, 258 N.W.2d 721, 727 (Iowa 1977). However, that doctrine has no application here, since jurisdiction over the individual defendants is not predicated on jurisdiction over Ceco but upon their own activities, as in *DeCook*, 258 N.W.2d at 726–27. *See* 4 C. Wright & A. Miller, *supra* § 1069, at 42–44 (Supp.1980) ("[J]urisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute."); Sponsler, *Jurisdiction Over the Corporate Agent: The Fiduciary Shield*, 35 Wash. & Lee L.Rev. 349, 365 (1978) ("[T]he fact that the individual defendant's actions otherwise meet the terms of the long-arm statute should not be affected by the fact that he has acted in a corporate capacity.").

Defendants, Bryant, Cherry and Webb also contend their special appearances were good because plaintiffs failed to mail notification of the filing of the original notice with the Secretary of State to each of them "at his address in the state of his residence" as required by section 617.3.

■ The statute provides an extraordinary method for securing jurisdiction. Therefore clear and complete compliance with its provisions is required. *See, e. g., Powers v. Iowa Harvestore Systems, Inc.,* 204 N.W.2d 623, 624–25 (Iowa 1973). An exception exists as to the language used in the notification of filing and original notice because the statute only requires substantial compliance with those provisions. *See Kreft v. Fisher Aviation, Inc.,* 264 N.W.2d 297, 303 (Iowa 1978).

We must decide whether the notifications to Bryant, Cherry and Webb were addressed in compliance with the statute.

■ The notification to Bryant was sent to him at Rural Route 1, Box 7, Battleboro, North Carolina. His affidavit, which is uncontroverted, stated that his mailing address was actually 705 Ravenwood Drive, Rocky Mount, North Carolina. The certified mailing was receipted for by Catherine Cherry. Bryant said in his affidavit he had never resided with the Cherrys or authorized them to receive his mail. He also said he did not receive the notification through the mail. In support of plaintiffs' resistance, their attorney gave an affidavit that he obtained the mailing address through the services of a private investigator who purportedly got it from Bryant's employer. The trial court held that Bryant's address was sufficiently stated. We disagree. This situation is analogous to those in *Powers v. Iowa Harvestore Systems, Inc.,* and *Bentley v. Allen-Sherman-Hoff Pump Co.,* 203 N.W.2d 312 (Iowa 1972), where similar conclusions were reached.

■ Cherry's notification was also sent to Route 1, Box 7, Battleboro, North Carolina, and signed for by Catherine Cherry, his wife. He stated in his affidavit that his correct address was Box 883, Battleboro.

According to the 1970 census, Battleboro has a population of 688. 1 *1970 Census of Population,* pt. 35, § A, at 35–11 (table). Considering the size of the community and the fact the address was a post office box in any event, the discrepancy was insubstantial. *See Gluszek v. Richardson,* 352 F.Supp. 1087, 1089 (E.D.Pa.1972). In these circumstances it was reasonably probable the mail would reach Cherry, and it did so. The trial court did not err in holding that the address was sufficient under section 617.3.

■ Webb's notification was sent to Route 4, Box 357, Rocky Mount, North Carolina, instead of his exact address which was Route 4, Box 357–B, Rocky Mount, North Carolina. The record shows the postal authorities gave him two notices regarding the letter, but he did not claim it. Therefore it was returned to plaintiffs' counsel. Webb denied receiving the notification of filing but does not deny receiving the postal notices. In *Buena Vista Manor v. Century Manufacturing Co.,* 221 N.W.2d 286, 288 (Iowa 1974), the court said the legislature intended that the addressee would receive the notification of filing. However, the court also noted the statute does not require that the notification actually be received for jurisdiction to be acquired. In this respect, section 617.3 differs from the statutes governing jurisdiction over nonresident motorists. *See Emery Transportation Co. v. Baker,* 254 Iowa 744, 748–51, 119 N.W.2d 272, 276–77 (1963). The relevant issue under section 617.3 is whether the notification was mailed to Webb by registered or certified mail "at his address in his state of residence." The discrepancy in the address was insubstantial in the circumstances. Moreover, the trial court could reasonably find that Webb's failure to respond to the notices was chargeable to him under this record. *See Hankla v. Governing Board of Roseland School District,* 46 Cal.App.3d 644, 120 Cal.Rptr. 827 (1975). We hold that the notification to Webb satisfied the statute.

■ Each of the individual defendants also challenges the sufficiency of plaintiffs'

proof of service. In *Gray v. Lukowski*, 241 N.W.2d 35 (Iowa 1976), the court recognized that jurisdiction is acquired by the fact of service, not proof of service. However, in *Gray* the court held jurisdiction could not be proved except by proof of service. Subsequent to the *Gray* decision, we amended Iowa R.Civ.P. 59(d) to provide that failure to make proof of service under the rules of civil procedure does not affect the validity of the service. This provision conforms to the view of the dissent in *Gray* as to proof of service under section 617.3. We overrule *Gray* to the extent it makes proof of service itself jurisdictional. We hold that the fact of service was established in the present case, making it unnecessary to determine whether proof of service was sufficient.

The court erred in upholding the statutory service of Bryant but was right in holding that the service of Cherry and Webb satisfied the requirements of section 617.3.

III. *The constitutional issue.* Each of the individual defendants attacked service on due process grounds. Because the trial court was correct in holding the service of Cherry and Webb complied with section 617.3 and because Duke's service is not attacked on that basis, we must decide the merits of the constitutional challenges of Cherry, Webb and Duke.

Applicable principles have been recently stated in *Berkley International Co. v. Devine*, 289 N.W.2d 600, 603 (Iowa 1980). Applying them here, we believe jurisdiction of Cherry and Webb is consistent with due process but jurisdiction of Duke is not.

█ The petition alleges Cherry was a foreman on the job and Webb was a supervisor in charge of safety at construction sites. Each was accused of having committed a tort in Iowa against Dale. In their affidavits, Cherry admitted he was a foreman on the job, and Webb did not state what his position was. Accepting the uncontroverted allegations of the petition as true, it is obvious Cherry and Webb had substantial contact with Iowa. They were in the state in connection with the work Dale was doing when he was injured. Since jurisdiction is predicated on their per-

sonal duties, their contacts as employees may be considered. *See, e. g., Miller v. Vitalife Corp.*, 173 N.W.2d 91, 95 (Iowa 1969); *Topik v. Catalyst Research Corp.*, 339 F.Supp. 1102, 1106–07 (D.Md.1972). Their presence and activities in Iowa made it foreseeable that they could be sued in Iowa. The corporate cloak doctrine has no application. *See, e. g., Getter v. R. G. Dickinson & Co.*, 366 F.Supp. 559, 567–68 (S.D. Iowa 1973); *Topik*, 339 F.Supp. at 1107–08.

Finally, Iowa's interest in vindicating rights of persons injured in this state plainly outweighs any inconvenience to Cherry and Webb of defending the case in Iowa in these circumstances.

We hold that the due process objections of Cherry and Webb are without merit.

█ However, we reach a different conclusion as to defendant Duke. The record shows he has always been a resident of Mississippi and had been in Mount Pleasant only to visit Mitchell's manufacturing plant, not the job site where Dale was injured. Although the petition alleged he had general responsibility for safety at construction sites, Duke averred in his affidavit that he did not have such responsibility and that his position did not require personal participation in any manner in construction activity. No counter-affidavit or other evidence was adduced to controvert Duke's affidavit. In this state of the record, we believe Duke overcame plaintiffs' prima facie showing of jurisdiction as a matter of law. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929–30 (6th Cir. 1974) ("Where a motion to quash and dismiss is filed, supported by affidavits, the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction.").

Under the principles delineated in *Berkley*, we hold that Duke's special appearance should have been sustained on the due process ground. It would be unreasonable to subject him to jurisdiction in Iowa in these circumstances. His only contact with the forum was on business for Ceco which was

unrelated to the construction activity. From this contact and the mere performance of his managerial duties in Mississippi, we cannot say he could have reasonably foreseen he would be sued in Iowa for a tort arising from the construction work. *See World-Wide Volkswagen Corp. v. Woodson,* —— U.S. ——, —— – ——, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490, 500–02 (1980). Subjecting him to jurisdiction in Iowa would abridge fair play and substantial justice. To the extent the constitutional branch of the corporate cloak doctrine is viable in Iowa, it is reflected in the constitutional standard applied here.

In sum, we affirm the trial court in overruling the special appearances of Cherry and Webb, vacate the order as to Mitchell, and reverse as to defendants Bryant and Duke.

AFFIRMED IN PART, VACATED IN PART, AND REVERSED IN PART.