## IN THE COURT OF APPEALS OF IOWA

No. 17-0244
Filed May 17, 2017

**IN THE INTEREST OF G.C.,**
**Minor Child,**

**C.R., Mother,**
      Appellant.

_____

      Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

      The mother appeals from the order terminating her parental rights. **AFFIRMED.**

      Timothy K. Wink of Schweitzer & Wink, Columbus Junction, for appellant mother.

      Thomas J. Miller, Attorney General, and Kristi A. Traynor, Assistant Attorney General, for appellee State.

      Jeffrey L. Powell of Law Office of Jeffrey L. Powell, Washington, guardian ad litem for minor child.

      Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights, arguing she should have been granted additional time to work toward reunification. Upon our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we affirm.

## I. Background Facts and Proceedings.

C.R. is the mother of G.C., born in 2013.[1] She has four other living children, none of whom are in her care.[2] Three of those children were the subjects of two prior child-in-need-of-assistance (CINA) cases, in 2009 and 2011. In the first case, services were provided to the family for nine months, and the case was closed. In the second case, services were again offered, but "[i]t took [the mother] six months to start making progress." Ultimately, the permanency goal in that case was changed to having C.R.'s mother become the children's guardian. A guardianship was subsequently created in August 2012, and the CINA case was closed. C.R.'s mother is still the guardian of the three children and does not allow C.R. to see them.

The mother has struggled with mental-health issues most of her life, and she has been prescribed medication and attended therapy off and on since she was about fifteen years old. The mother has also used illegal substances off and on since she was twelve years old. She reported she first used methamphetamine in the late '90s when she was seventeen, using

> about once [per] month for a period of about a year. She then quit for three years. She started to use again [while she was married to

---

[1] The child's legal father is not a party to this appeal; the child's biological father is deceased.
[2] The mother's eldest child, now an adult, had been in the care of the mother's grandmother.

her then husband]. For three years, they would use about twice a month. She quit again in 2003. She used for a month in 2005 and quit again.

It is unclear whether she abused substances from 2005 to 2014, but the prior CINA cases did not concern use of illegal substances.[3]

In December 2015, it was reported that the mother was using methamphetamine while caring for G.C. At that time, the mother was on probation for her felony forgery conviction. The mother initially denied she had used methamphetamine, but she eventually admitted her use after she tested positive for the substance. The child was placed in the care of his paternal grandmother, where he has since remained.

The mother agreed to participate in family-centered services through the Iowa Department of Human Services (Department). She also completed a substance-abuse evaluation, and it was recommended she complete intensive outpatient treatment. She began the treatment program but was kicked out of that program shortly thereafter "because she brought someone else's urine for a [drug test]." She then completed a twenty-one day inpatient-treatment program in April 2016, but after she was released, service providers and the mother's probation officer suspected she was using again. At her probation officer's recommendation, the mother was placed in a halfway house, but then the mother stopped participating in treatment altogether. She went to jail at the beginning of June 2016 after her probation was revoked for failing to provide a sample for drug testing.

---

[3] The 2009 CINA case was related to the condition of her home, which was found dirty and unsafe for her children. The 2011 CINA case involved reports that her children had been sexually abused.

In July 2016, the mother was placed in the Residential Correctional Facility (RCF) in Davenport "to work on the issues that led to [the child's] removal and gain stability." She found a job and set up appointments to have mental-health and substance-abuse evaluations. But in August, "she was given meth by someone that she 'kinda knew' during her lunch break at work," and she smoked it. She tested positive a few days later after a random drug screen was done. In September, the State filed a petition to terminate her parental rights.

The termination-of-parental-rights hearing was held in November 2016. At the hearing, she challenged the sufficiency of the notice she received concerning the State's termination petition, but the juvenile court ultimately overruled the mother's objection, finding she was properly served as required. The mother testified that she had not used illegal substances since her last use in August and that she was attending NA and AA meetings. She testified she was now prescribed and taking medication, which had helped her stabilize her mental health, and she was also attending therapy. She testified she was still employed, and she believed she would be released from the RCF in mid-December 2016. She admitted she had committed some infractions of RCF policy other than testing positive for drugs in August, including engaging in a relationship with a resident and sneaking a cell phone into the facility. She admitted the infractions had extended her expected discharge date. She requested the court grant her additional time for reunification.

In February 2017, the court entered its order terminating the mother's parental rights to G.C. The mother now appeals. She does not challenge the statutory grounds for termination found by the district court or its finding that

termination of her parental rights was in the child's best interests.[4]  Instead, she argues she should have been given additional time for reunification because (1) she was making progress and "false information" was reported to and relied upon by the juvenile court in making its decision, (2) reasonable efforts were not made to reunify the family, and (3) the State's notice of its termination petition "was deficient on its face" and therefore the termination-of-parental-rights hearing should not have been allowed to proceed.

## II.  Discussion.

### A.  Notice.

We begin with the mother's notice claim first.  The mother does not and cannot assert that she failed to receive notice of the proceedings at least seven days prior to the termination-of-parental-rights hearing or that she was not provided an opportunity to be heard.  Rather, she sets aside reality and focuses instead on a scrivener's error in the original return of service, arguing the return-of-service was facially deficient such that "the termination order . . . should be held void."  She contends, "[b]ecause service in this matter was insufficient the termination order entered herein should be held void."  As shown below, her argument is devoid of any merit.

Under Iowa Code section 232.112(1) (2016), necessary parties to the termination-of-parental-rights proceeding "are entitled to receive notice and an opportunity to be heard."  The notice, if personally served, must be delivered "not less than seven days prior to the hearing on termination of parental rights."  Iowa

---

[4] We need not review any step of the three-step analysis the juvenile court must make in terminating a parent's parental rights if the step was not challenged by the parent on appeal.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Code § 232.112(3). Additionally, the notice must "be made according to the rules of civil procedure relating to an original notice where not inconsistent with the provisions of [section 232.112]." *Id.*

Iowa Rule of Civil Procedure 1.302 sets out the content that is required to be contained within the original notice. The original notice must "be served with a copy of the petition." Iowa R. Civ. P. 1.302(3). Thereafter, the person that served the original notice and petition must "make proof of service thereof to the court . . . ." Iowa R. Civ. P. 1.308(4); *see also* Iowa Code § 331.653(69) (requiring sheriffs to "[c]arry out duties relating to the return of service in civil cases as provided in rule of civil procedure 1.308"); Iowa R. Civ. P. 1.308(3) (providing that if service was made by the sheriff, the sheriff may, among other options, file the return and notice with the clerk); Iowa R. Elec. P. 16.314(4) (requiring as of February 2017 that the "filer . . . scan and electronically file the return of service," which "must contain a listing identifying the documents served"). The contents of the proof of service "shall state the time, manner, and place thereof and name the person to whom [the] copy was delivered . . . ." Iowa R. Civ. P. 1.308(2). Additionally, "[a]ll returns of service shall specify what pleading, order, or writ was served," and if an original notice was served, the return of service "shall certify that a copy of the petition was served with the notice pursuant to [rule 1.302]." Iowa Ct. R. 22.35(3). Nevertheless, "*[f]ailure to make proof of service does not affect the validity of the service.*" Iowa R. Civ. P. 1.308(4) (emphasis added). Moreover, proof of service can be amended at any time at the court's discretion "unless it clearly appears that material prejudice

would result to the substantial rights of the party against whom the process issued." Iowa R. Civ. P. 1.309.

It is true, as the mother points out, that the October 14, 2016 document captioned "Return of Service" filed by the Scott County Sheriff's Office only certified that the mother was personally served a copy of an "order" by the sheriff's office. It did not certify she was served a copy of the petition and notice of the hearing. But, this lack of specificity does not automatically render the service invalid. *See* Iowa R. Civ. P. 1.308(4); *Barrett v. Bryant*, 290 N.W.2d 917, 923 (Iowa 1980). Rather, the issue centers on whether service in fact was achieved, not merely whether the proof of service filed was deficient. *See Barrett*, 290 N.W.2d at 923. Here, the mother does not claim that she was not served the notice and petition as required under section 232.112. We believe this is fatal to her claim. *See id.*; *In re Marriage of Bruns*, 535 N.W.2d 157, 163 (Iowa Ct. App. 1995) ("[Respondent], however, never argued that personal jurisdiction was not acquired because the original show cause order and application were not served on him within the time prescribed by the court. Any defects in the original service of process were waived by responding to the summons."). In any event, the record establishes the mother was duly served with the requisite papers.

After the mother filed an "Objection to Notice of Termination" the State filed a corrected return of service clarifying that on October 14, 2016, the Scott County Sheriff's Office personally served the mother a copy of "ORD, PETITIION [sic] TO TERMINATE PARENTAL RIGHTS, SUMMONS & NOTICE OF HEARING, ORD APPOINT ATTY & GUARD." During the termination-of-

parental-rights hearing—at which the mother was present—the Scott County Sheriff's Office employee that served the documents on the mother testified by telephone that on October 14, 2016, she personally served the mother a copy of "the order stating the hearing date and time and location, the petition to terminate parental rights, and . . . [a]n order appointing attorney and guardian."[5]

It is undisputed that the mother was personally served with the requisite documents. We agree with the juvenile court that the mother was properly served notice within the meaning of Iowa Code section 232.117 and the Iowa Rules of Civil Procedure. The court's termination order is therefore not void.

### B. Reasonable Efforts and Additional Time.

We address the two remaining issues together because they are related. The mother claims reasonable efforts were not made because the Department in July 2016 "agreed that [the mother] would have until the review and permanency hearing set for January 23, 2017 to show appropriate progress." She argues she should have had that additional time to work towards reunification based upon the "agreement" and her last-minute progress. We disagree.

The record does show that on July 7, 2016, the juvenile court scheduled a permanency hearing in the case for January 2017. However, on the same date, the court entered its dispositional order stating:

> The [Department] has made reasonable efforts to prevent removal. The mother completed inpatient substance abuse treatment but did not complete outpatient aftercare services. The credible evidence is she relapsed. Housing is not stable. She is

---

[5] The sheriff's employee went on to testify that service was first attempted at the mother's address. She was not home, so "[t]hey left a notice to have her contact us. When she contacted us, we got her to come in here to the sheriff's office, and on October 14th at 10:05, I personally served her with the paperwork."

> not employed since last hearing. She is currently in custody following revocation of probation for a felony offense. She is awaiting placement at the RCF. The RCF will offer an opportunity for her to work on the issues that led to removal and gain stability.

Thus, it was understood that the mother was going to remain substance free while at the RCF. Yet, just a little over a month later, while at the facility, the mother relapsed on methamphetamine.

The mother is no stranger to CINA proceedings. There is no evidence that she requested any different or additional services than those provided by the Department. Though the "Department has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing," and if the parent does not make a timely request, the issue is not preserved for our review, as is the case here. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). In any event, the record demonstrates the Department provided adequate services in this case, and the mother did not really participate until the Department recommended termination of her parental rights after she tested positive for methamphetamine in August 2017. The mother was well aware of what was required of her under the case permanency plan, and she chose not to really try until the last minute. We recognize that battling substance abuse and mental health issues are not easy tasks. But the focus is on the child's best interests, and the legislature "has made a categorical determination that the needs of a child are promoted by termination of parental rights" when the child cannot be returned to the parent's custody within the relevant statutory time period. *See In*

*re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000); *see also* Iowa Code § 232.116(1)(f) (setting the reunification time period for children aged four years or older where the "child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days"), (h) (setting the reunification time period for children aged three years and younger where the "child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days"). By the time the termination petition was filed, G.C., less than four years old, had been out of the mother's custody for more than six months. In order to continue placement for another six months, section 232.104(2)(b) requires a court to find "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Given the mother's past performance and long history of substance abuse, we are not convinced additional time or alternative services would change her conduct. We agree with the juvenile court that reasonable efforts were made and additional time for reunification was not warranted under the facts of the case.

### IV. Conclusion.

Because the mother was properly served notice of the termination-of-parental-rights proceedings, including receiving a copy of the State's petition and the juvenile court's order setting the date for the hearing on the petition, we find no merit in her claim the juvenile court's order terminating her parental rights was void. Additionally, because we agree with the juvenile court that reasonable

efforts were made and additional time for reunification was not warranted under the facts of the case, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**